<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 96-2299

                        MARTIN J. NEELY,
                          Petitioner,

                               v.

                 BENEFITS REVIEW BOARD, ET AL.,
                          Respondents.

                      ____________________

            ON PETITION FOR REVIEW OF A FINAL ORDER

                  OF THE BENEFITS REVIEW BOARD

                      ____________________

                             Before

                     Boudin, Circuit Judge,
John R. Gibson, Senior Circuit Judge,
and Pollak, Senior District Judge.

                     _____________________

   Gary A. Gabree, with whom Stinson, Lupton, Weiss & Gabree,
P.A. was on brief for petitioner.
   Joshua T. Gillelan II, Senior Attorney, Division of Employee
Benefits, with whom J. Davitt McAteer, Acting Solicitor of Labor,
and Carol A. De Deo, Associate Solicitor, were on brief for
respondent Director, Office of Workers' Compensation.
   Stephen Hessert, with whom Norman, Hanson & DeTroy was on
brief for respondent Bath Iron Works Corporation.

                    _______________________
                        March 24, 1998

                    _______________________

 BOUDIN, Circuit Judge.  Martin Neely suffered a back
injury while employed by Bath Iron Works ("Bath") and sought
compensation under the Longshore and Harborworkers' Compensation
Act, 33 U.S.C.  901 et seq. ("The Longshore Act" or the "Act").  
Compensation was denied on the ground that Bath had voluntarily
paid in full for Neely's temporary disability and for all
outstanding medical expenses.  Neely, supported by the Secretary of
Labor, seeks review in this court.
 The pertinent facts are undisputed.  Bath maintains a
shipyard for construction and repair in Bath, Maine.  Neely, while
employed as a tinsmith, suffered back injuries on September 29 and
30, 1992.  Neely incurred some medical expenses and was out of work
for about two weeks in October 1992, but then returned to work.  
Bath paid Neely compensation for his temporary disability and for
his medical expenses.
 There have been no further periods of disability due to
the injury.  However, under the Longshore Act, the compensation
regime is one of continuing protection:  subject to statute of
limitations provisions, 33 U.S.C.  913, employer liability for a
covered accident can involve ongoing responsibility to pay
compensation where partial or complete disability occurs or
reoccurs, and for medical expenses as they accumulate.  33 U.S.C.
907, 908.
 In October 1992, Bath filed a notice of injury with the
federal Office of Workers' Compensation Programs, the agency within
the Labor Department that administers workers' compensation under
the Longshore Act.  Bath also filed a notice that it was
controverting Neely's right to compensation under that statute, see33 U.S.C.  914(d), because "Claimant [is] pursuing [compensation]
under State Act."  It is common for workers like Neely to be
protected both by the federal statute and by Maine's counterpart
workers' compensation law.  See, e.g., Reich v. Bath Iron Works
Corp., 42 F.3d 74, 76 (1st Cir. 1994).
   Then, on May 4, 1994, Neely filed an "Employee's Claim
for Compensation" with the Labor Department on account of the same
injury and on June 9, 1994, Bath filed a new notice of
contravention containing the following, apparently boilerplate,
response:  "Bath . . . disputes the fact of injury, nature and
extent of disability, timeliness of filing, and responsible
carrier."  It appears that Bath had continued to pay ongoing
medical expenses for Neely's injury while refusing to acknowledge
to Neely that he was entitled to such payments under the Longshore
Act.
   After informal proceedings failed to resolve the dispute,
the case was referred to an administrative law judge.  See 33
U.S.C.  919(c), (d).  At the start of the hearing, Neely agreed
that he was not seeking a monetary award but said that he wanted an
order requiring Bath to file forms with the Labor Department to
acknowledge "that payments in fact made were as much under the
Longshore Act as under the state act."  The Longshore Act requires
the employer to file notices upon making a first payment of
compensation under the Act, or suspending payment, or making a
final payment.  33 U.S.C.  914(c),(g).
   In response, Bath told the ALJ--contrary to its earlier
filings--that it did not now dispute that Neely and his accident
were covered by the Longshore Act.  However, Bath said correctly
that it was entitled to a credit against Longshore Act liability
for payments made for the same injury under state law.  33 U.S.C.
903(e).  Therefore, it argued it should not be required to file
additional forms suggesting that benefits were due under the
Longshore Act.
   The ALJ then ruled that Neely was not entitled to relief.  
He said that the payments had been made under state law, so that no
forms had to be filed under the Longshore Act.  He also said that
Neely was not prejudiced because Neely's claim of compensation
tolled the statute of limitations.  Neely appealed the decision to
the Benefits Review Board, which sustained the ALJ, quoting
language from our Reich decision that payments made under the Maine
statute "erase[ ] . . . liability under the federal statute."  42
F.3d at 76.
   Neely then appealed to this court, this time eliciting a
brief in partial support of his position filed by the Solicitor of
the Labor Department, on behalf of the Director of the Office of
Workers Compensation Programs.  Recasting the case somewhat, the
Solicitor urged that Neely was entitled to an order determining
that his injury was covered by the Act but not to an order
requiring Bath to file the forms in question.  Bath defended the
Benefits Review Board in full, adding tersely that no case or
controversy existed and that Neely's request was essentially one
for "an advisory opinion."
   We obtained supplemental memoranda on the jurisdictional
question and now turn to the issues on appeal.  At the outset, a
majority of the panel concludes that a case or controversy exists
under Article III of the Constitution.  For Article III purposes,
it does not matter whether we look to Neely's original request that
notices be filed or to the Solicitor's argument for a declaratory
ruling:  in substance both seek a ruling that Neely's accident was
covered by the Act.
   The "case or controversy" label is used to embrace a
number of related but different problems of judicial authority,
including the requirement of a concrete dispute between
adversaries, standing, ripeness, mootness and limitations relating
to political questions.  See E. Chemerinsky, Federal Jurisdiction 2.1, at 41 (1989).  In this case, there are adverse parties;
Neely has standing as to his coverage under the Act; the coverage
issue will not be narrowed or illuminated ("ripened") by further
events; and the issue certainly does not present a political
question.   
   Rather, our concern is whether this is actually a "live"
controversy or whether the likelihood of any practical effect from
a ruling is so slight as to raise nothing more than a hypothetical
question.  See Raines v. Byrd, 117 S. Ct. 2312, 2317 (1997), Aetna
Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937).  The absence
of any request for a dollar award is not fatal; declaratory relief
alone may be sought where it may have some meaningful effect.  See
id.  But Article III requires some minimum likelihood that the
relief sought actually does or could matter.  See id.
   In this instance it is undisputed that Neely suffered an
injury severe enough to cause some temporary disability and medical
treatment, that the disability abated, and that the medical
treatment continued for a period.  The ALJ decision tells us--
without dispute from the employer--that Neely's filed claim alone
has tolled the statute of limitations.  Thus, a renewed disability
traced to the same injury, or further medical expenses, could
conceivably give rise to a further award under the federal statute.
   Now, whether this will happen is uncertain, but it
certainly could.  Neely's was a back injury, an injury famously a
source of recurring problems; and Neely's injury was not a trivial
one since it involved two episodes of inability to work at all,
albeit brief ones; also, his medical expenses are said to have
continued thereafter, possibly up to the time that he filed his
claim almost a year and a half after the initial disability.  At
the very least, Neely had some basis for fearing that he might have
to make a further claim.
   If he did make such a claim, the ruling now sought would
remove from dispute the question whether his injury was a covered
accident, a matter about which there are often quite difficult
disputes.  See, e.g., Pittman Mechanical Contractors, Inc. v.
Director, Office of Workers' Compensation Programs, 35 F.3d 122,
123 (1994).  Here, in fact, Bath disclaimed coverage when Neely
filed his claim.  Its later admissions before the ALJ would make
further dispute by Bath more difficult but not necessarily
impossible.
   Thus, what Neely would gain from a ruling now amounts to
this: the emotional assurance of coverage; a resolution of the
issue--if Bath chooses to dispute it--while memories are fresh and
records easily available; and administrative speed, in the event of
a future claim by Neely based on the same accident, so long as
coverage was the only issue in dispute.  The Solicitor tells us
that ALJ dockets are crowded and that any dispute about a claim can
delay resolution for many months, if not more.
   These are not overwhelming effects.  They are surely less
than the practical consequences of a declaratory ruling about
insurance coverage, in advance of an incident, where a ruling
against coverage will induce the insured to seek new coverage or
take some other action.  See, e.g., Wisconsin Power & Light Co. v.
Century Indemnity Co., ___ F.3d ___, 1997 WL 730714, at *4-*5 (7th
Cir. Nov. 25, 1997).  But they are also not trivial advantages and
might seem significant to a worker with limited resources faced
with pursuing an administrative claim against an experienced
corporate opponent.  We think that there is enough at stake for
Neely to permit the case to proceed under Article III.
   This brings us to the merits.  The relief originally
sought by Neely, it will be recalled, was the enforcement of
provisions in 33 U.S.C.  914 that require the employer to file
forms with the Labor Department at the time the first payment is
made, 33 U.S.C.  914(c), and on the suspension or termination of
compensation, 33 U.S.C.  914(c), (g).  The purpose of these
provisions appears to be to permit the Department of Labor to keep
track of payments and to take remedial action on its own
initiative, as it is allowed to do.  33 U.S.C.  914(h).
   We are inclined to agree with the Solicitor that these
filing provisions are not designed to confer rights on the employee
or to be enforced by him or her.  The employee, after all, knows
whether compensation payments have started or ceased.  Further, the
filing of the forms would not itself settle coverage definitively
in Neely's favor; they might be an admission but Neely already has
that from the ALJ conference.  What Neely really needs--to protect
against later disputes as to coverage--is a declaration of
coverage.
   The Solicitor says that such an order is supported by
statutory language and by court and administrative precedent.  The
statutory argument is based on requirements that a hearing "shall"
be ordered on disputed claims, 33 U.S.C.  919(c), and that the ALJ
"shall" file an order "rejecting the claim or making the award
(referred to in this chapter as a compensation order) . . . , "  33
U.S.C.  919(e).  But whether a request for a declaratory ruling as
to coverage falls within the rubric of "claim for compensation," or
is otherwise appropriate, is not answered by referring to repeated
uses of the term "shall."
   Nor do we think much help is provided by Ingalls
Shipbuilders v. Asbestos Health Claimants, 17 F.3d 130 (5th Cir.
1994), the main judicial precedent relied on by the Solicitor.  
There, the district director refused to refer numerous filed
asbestos claims to an ALJ for resolution.  On suit by the employer,
the court of appeals ruled that the district director had a
mandatory obligation to transfer claims to the administrative law
judge on request of "any interested party."  Id. at 133 (quoting 33
U.S.C.  919(c)).  But Ingalls did not decide whether and when an
ALJ could or must issue declaratory orders to address coverage
issues..
   Finally, the administrative precedent cited is weak.  
Kinnes v. General Dynamics Corp., 25 B.R.B.S. 311 (1992), sustained
a federal proceeding filed after a state award where the former was
for the purpose of securing "additional compensation."  In the
other case cited, Hoodye v. Empire/United Stevedores, 23 B.R.B.S.
341 (1990), the employer who admitted that continuing disability
payments were due to the employee sought to prevent entry of an
award by admitting such liability in the course of the proceeding;
in the present case there is no proven continuing disability, nor
proof of any unpaid medical expenses.
   Our problem is not one of ambiguity in the Act but of a
typical gap in a complex statutory scheme.  See, e.g., United
States v. Vaknin, 112 F.3d 579, 589 (1st Cir. 1997).  It is
doubtful that Congress considered, or that its language was drafted
to deal with, the relatively rare problem of the claimant who
suffered an injury creating disability, was fully compensated for
the disability, and was then interested in a declaratory ruling to
guard against recurrence or further medical expenses.  Indeed, the
Solicitor's brief tells us that no legislative history on the issue
can be found, nor are we surprised.
   The Secretary has rulemaking power, 33 U.S.C.  939, but
has not used it to close the gap in question (for example, by
defining compensation orders to cover cases like this one).  In
this context, the omission is not fatal:  most of the time, policy
choices can be made by the agency either through rule making or
adjudication.  See SEC v. Chenery Corp., 332 U.S. 194, 202-03
(1947).  Here, however, the ALJ and the Benefits Review Board
decided the issue the other way.  And because of the peculiar
structure of the Act, the Secretary and her delegate do not review
individual decisions.
   One might ask why this should matter.  Policy-making
authority under the Longshore Act belongs to the Secretary, not to
the ALJ or the Benefits Review Board.  See Wood v. United States
Dep't of Labor, 112 F.3d 592, 595 (1997).  The Solicitor has told
us, on behalf of the Secretary's policy-making delegate (the
Director) that this kind of compensation order is proper.  But
substantial precedent, backed by the leading treatise on
administrative law, tells us that briefs submitted in litigation
are not the proper place for agencies to "make policy."
   Whether this should always be so might be debated.  To be
sure, on matters peculiarly within the knowledge of the parties, an
adjudicatory finding--however imbued with policy considerations--
might be sometimes unfair unless and until the parties had been
heard.  In other instances, one might have some doubt whether the
view expressed informally through a brief was really that of the
policy maker (as opposed to counsel).  It is not apparent that any
of the reasons have much bearing on the present case.
   In all events, the Supreme Court, has been willing to
treat the views of the Secretary of Labor expressed in a brief as
entitled to some deference, even though not the full deference due
under the Chevron doctrine, see Chevron U.S.A., Inc. v. NRDC, Inc.,
467 U.S. 837 (1984), to a policy-making judgment made in the course
of a formal proceeding.  See Metropolitan Stevedore Co. v. Rambo,
117 S. Ct. 1953, 1962 (1997); see also Massachusetts v. FDIC, 102
F.3d 615, 621 (1st Cir. 1996) (stating that "less formal agency
determinations may be accorded something less than full Chevrondeference").
   Rambo is also pertinent to the merits of the present
case.  There, a longshoreman injured on the job was awarded
permanent, partial disability but later, payments were discontinued
because his earnings had increased beyond his pre-injury wages.  
The employee sought a continuing award of nominal compensation to
toll the statute of limitations and permit a future claim if his
wages declined and resumed disability payments might otherwise have
been proper.  33 U.S.C.  913(b)(2) (final sentence).  The ALJ
refused.
   Ultimately, the Supreme Court held that such award of
nominal compensation could and should be entered, assuming "a
significant potential that the injury will cause diminished
capacity under future conditions."  Id. at 1963.  Rambo is thus
authority for a compensation order without any actual harm
presently uncompensated.  Further, the nominal compensation order
in Rambo undercut the statute of limitations and, in that sense,
was more in tension with an express provision of the Act than is
the kind of relief sought by Neely in this case.   
   Of course, the context in Rambo was somewhat different.  
The consequences for a worker there, in the absence of nominal
compensation, was a risk of being completely foreclosed from future
recovery by the statute of limitations.  Here, the statute is
supposedly tolled, and we are talking only about administrative
inconvenience and delay if relief now is denied.  About the most
one can say is that Rambo removes any statutory bar to declaratory
compensation orders and, in an analogous situation, encouraged a
protective approach somewhat akin to what the Solicitor urges here.
   Rambo required, as a condition of nominal compensation,
that the claimant show "a significant possibility" of future
disability based on the past injury.  117 S. Ct. at 1964.  We think
that the declaratory relief sought here is sufficiently similar
that the same showing, as to either disability or expenses, should
be imposed on Neely before the employer is required to litigate or
the ALJ to resolve an issue of disputed coverage.  On remand, Bath
can insist upon such a showing as a part of Neely's claim.
   The Secretary is free to fine-tune or adjust such
requirements by regulation.  The Supreme Court in Rambo made clear
that the Secretary does have rule-making authority in this realm.  
See 117 S. Ct. at 1962.  Its exercise would give guidance to
litigants, ALJs and the Review Board and would save time, expense
and confusion in future court proceedings.
   The decision of the Benefits Review Board is vacated, and
the matter remanded for further proceedings consistent with this
decision.  No costs will be awarded to any party.
                                              Dissent follows.

Pollak, J., concurring in part and dissenting in part.  I regret
that I am not able fully to subscribe to the court's eminently
reasonable opinion.  I agree that it makes good sense to adopt the
generous construction of the Longshore and Harbor Workers'
Compensation Act, 33 U.S.C. 901 et seq. ("Longshore Act"), contended
for by the Secretary of Labor.  Under the regime espoused by the
Secretary, a worker who has, without having filed a claim with the
Office of Workers' Compensation Programs ("OWCP"), actually received
compensation for an injury assertedly compensable under the
Longshore Act would have standing to ask the OWCP for a formal
declaration of coverage.  In the event that the worker should at
some later time suffer a disability alleged to be a recurrence of,
or derivative from, the original injury, the existence of the
declaration of coverage would obviate litigation of the coverage
issue at a point in the future when some witnesses might have
disappeared and the memories of available witnesses might have
dimmed.  The court -- correctly, in my view -- reads the Longshore
Act as not mandating the regime advocated by the Secretary; but the
court also -- again correctly, in my view -- finds, in effect, that
the Secretary has made a persuasive case that the regime would be
a salutary elaboration of the Act's prescribed procedures, and that
measured judicial respect for the Secretary's policy-making
responsibilities counsels acquiescence in the Secretary's position.  
But to all this the court adds a significant caveat -- one which I
also agree with -- namely, that a claimant is not entitled to a
declaration of coverage unless the claimant is able to establish
"'a significant possibility' of future disability based on the past
injury."      
   Given my agreement with the core of the court's opinion,
what is it I disagree with?  My disagreement has nothing to do with
the court's analysis of the circumstances in which the issuance of
a declaration of coverage is appropriate.  My disagreement with the
court is with its decision --  namely, that the order of the
Benefits Review Board is to be vacated and the case remanded to the
Board with a view, presumably, to a further remand to
Administrative Law Judge Tureck with instructions to entertain a
motion to be submitted by Neely for a declaration of coverage.  
This would be the proper disposition of Neely's petition for review
if Neely had sought a declaration of coverage from Judge Tureck and
had been turned down, and had then on appeal sought the same relief
from the Benefits Review Board and again been turned down, and had,
finally, come to this court on petition for review seeking judicial
vindication of a procedural claim incorrectly held to be non-
cognizable at two levels of administrative adjudication.  But that
is not what happened.
   What did happen is this:
   As the court's opinion explains, Neely, an employee of
Bath Iron Works, suffered work-related back injuries on September
29 and 30, 1992.  On October 1 Bath received word that Neely had
hurt his back, and on that date Bath authorized Neely to seek
treatment from a physician.  On October 2 Bath filed a report of
injury under the Longshore Act with the OWCP.  Four days later, on
October 6, Bath filed a "Notice of Controversion of Right to
Compensation", the ground of controversion being "Claimant pursuing
under State Act." Because of his injuries, Neely was off  work from
October 5 to October ll, and from October 12 through October 18.  
Bath, without delay, (1) paid compensation for Neely's two
sequential weeks of disability, and (2) took care of Neely's
medical expenses.
   A year and half later, in the spring of 1994, Neely filed
an "Employee's Claim for Compensation" under the Longshore Act;  
Bath promptly countered with what the court rightly characterizes
as an "apparently boilerplate" controversion, disputing all aspects
of liability.  When the matter came before Judge Tureck in the
summer of 1995, Bath's attorney, Stephen Hessert, presented a more
coherent legal position on his client's behalf:
        Bath Iron Works paid various periods of
   temporary total disability benefits for the
   injury under the State of Maine Workers'
   Compensation Act, and they paid all
   outstanding medical bills.  As far as I know,
   there is no claim for additional monetary
   benefits.

        A first report was filed under the
   Longshore Act, but nothing else was filed
   under the Longshore Act.  I think the issue is
   whether Mr. Gabree is entitled -- or his
   client is entitled to some sort of protective
   decree. . . .     
            
Gary Gabree, Neely's attorney, responded:
        I generally agree with what Mr. Hessert
   has said. . . . There really is no claim for
   additional benefits.  We are seeking a
   protective decree at this time. . . .
Judge Tureck asked:
        What do you mean by a protective decree? . . . .
Mr. Gabree replied:
        . . . . I think what we're -- the real
   dispute here, I guess, is the reluctance of
   the employer to file the LS -206 or the 208[]acknowledging that payments have been made
   under the Longshore Act.  I think 14(g) [33
   U.S.C. 914(g)] requires that, and down the
   road, I think that could be a potential
   problem.

    ADMINISTRATIVE LAW JUDGE:
         So what is it you want me to do here?
    MR. GABREE:
         Well, I mean, if we could -- I'd settle
    for an order requiring the employer to file
    the LS-206, 208, acknowledging that this claim
    is compensable under the Longshore Act, and
    that payments in fact made were as much under
    the Longshore Act as under the state act.  I
    think it comes down to a choice of remedy, and
    I believe that's the employee's choice, not
    the employer's.

Judge Tureck then interjected: "Okay, are any benefits ongoing
right now?" After being assured by Mr. Gabree that "all [benefits]
have been paid, in the amounts that we would be seeking," and
indeed that "the payments were made contemporaneously" [i.e., in
1992], Judge Tureck put a further question:
         Assuming I went ahead and issued the
    kind of order that you want required the
    employer to file the appropriate forms, what
    would you do with them?  I mean, at this point
    in time, what effect would it have even if
    they acknowledged the fact that this was a
    potential Longshore Act claim?

    MR. HESSERT:         
         I can tell you -- do you mind if I respond to
that?
    MR. GABREE:
         No, go ahead.
    MR. HESSERT:
         From my client's point of view, what
    this is about is attorney's fees.  We are in a
    situation where cases like this happen; Bath
    accepts responsibility for them; they pay the
    benefits; file the federal first report; file
    the state first report; and make payments.  
    Mr. Gabree brings a, you know, asks for
    Longshore filed, the 206 and 208, and then
    asks for an attorney's fee based on the
    assumption that somehow provides a benefit to
    his client. . . .

    MR. GABREE:
         Conversely, Your Honor, it seems to be
    a relatively simple matter to file the LS-206
    or 208, and it also seems to be the
    appropriate course in claims that are clearly
    made under the Longshore Act once payments are
    made, so that the employer's reluctance to do
    so indicates something to me, and while I
    admit that we have discussed and I have kicked
    around for many hours what apparent advantage
    it gives us, and I'm prepared to address that
    issue in my brief, I can say that it's not a
    particularly strong argument, and there isn't
    a lot.

         There is a possibility that some of the
    case law might support -- it might
    strengthen our case in future cases if and
    when we seek to pursue this claim and are
    confronted with the failure to prosecute
    defense arguably, and as far as the fees issue
    goes, perhaps this is to some degree a
    reaction to the administrative requirements we
    face in dealing with the U.S. Department of
    Labor.  I have in the past run into problems
    when there is an appropriate fee to be made,
    in getting that fee paid, because the employer
    fails to file the 206 or the 208 when clearly
    the work was done under the Longshore Act, but
    the additional step of filing that paperwork
    seems to be essential for the OWCP to award us
    any fees for whatever we've achieved for a
    client up to that point.  I say all this,
    recognizing that the additional work we do in
    this case in presenting this issue to you
    hopefully is a one-time deal, and I don't
    necessarily hold out any great hopes for
    making a lot of money on this case.

    As the court notes in its opinion, Judge Tureck was not
persuaded that he should direct Bath to file LS-206 and LS-208.  
Judge Tureck ruled that because Bath had made its payments under
Maine law the Longshore Act's requirement that an employer file
notices relating to compensation payments were without application:
"nothing in the Act or the regulations requires an employer to file
notices of payment or termination of compensation which was not
paid pursuant to the Act." In declining to order Bath to file the
forms,  Judge Tureck reached the right result but for the wrong
reason.  The correct reason is the one which was urged upon this
court in the brief of the Solicitor of Labor -- "The reporting
requirements are intended to serve administrative purposes in the
district director's and Director's offices -- neither to establish
nor to safeguard the claimant's right to benefits" -- and which
this court very sensibly accepts in its opinion: "[T]hese filing
provisions are not designed to confer rights on the employee or to
be enforced by him or her."
    On appeal to the Benefits Review Board, Neely evidently
hewed to the line taken before Judge Tureck.  The Board, in its per
curiam affirmance, summarized Neely's contentions as follows:
         Claimant contends the administrative
    law  judge erred in failing to find that: his
    claim is compensable under the Act; payments
    made under the Maine Act are also required
    under the Longshore Act; employer is liable
    for these payments and should be ordered to
    file the appropriate forms and acknowledge its
    liability under the Act; and employer is
    liable for payment of the Section 14(g)
    penalty[] and for an attorney's fee.

The Board's analysis of the Longshore Act was in accord with Judge
Tureck's: "[P]ayments made under another compensation law need not
be reported to the district director on forms provided by the
Secretary under this Act.  Therefore, we agree with the
administrative law judge's conclusion that payments made under the
Maine Act do not compel the employer to file forms LS-206 or LS-208
in compliance with Section 14 of the Longshore Act." (Like the
administrative law judge, the Board reached the right result,
albeit for the wrong reason).  In a footnote, the Board opined: "In
light of our decision herein, we need not address claimant's
argument regarding counsel's entitlement to an attorney's fee.   
However, we note that as claimant has neither sought nor been
awarded additional benefits beyond those voluntarily paid by
employer, counsel is not entitled to a fee."
    In his petition for review in this court Neely has again
advanced the arguments which Judge Tureck and the Benefits Review
Board found unavailing.  In his "Summary of Argument" Neely states
his contentions in three paragraphs, the gist of which is as
follows: (1) "The decision below improperly denies the employee the
right to choose his remedy and the right to pursue his claim under
the Longshore and Harbor Workers' Compensation Law. . . ."  (2)
"Since the parties stipulated to the essential elements of the
Longshore claim and the employer voluntarily paid comparable
benefits under the state workers' compensation law, it was error
for the administrative law judge and the Benefits Review Board
below to hold otherwise.  Accordingly, the employer's failure to
file the paperwork acknowledging their responsibility under 914(g)
of the Longshore and Harbor Workers' Compensation Act subjects them
to the penalties mandated by that section."  (3) "Lastly, under the
reasoning in Kinnes[v. General Dynamics Corp., 25 B.R.B.S. 311
(1992)], the employee has successfully established that he is
entitled to an award and consequently has prevailed in this
proceeding.  Therefore he has successfully prosecuted this claim
and is entitled to an attorney fee."
    This completes my prcis of the procedural history of
this case up to the point at which it appeared on this court's
docket.   I have canvassed this procedural history in what may
arguably be regarded as superfluous (and hyper-tedious) detail with
a view to making a single point.  At no point in the proceedings
before the administrative law judge or the Benefits Review Board,
or in his opening brief in this court, did Neely present the
contention -- namely, that he might at some point in the future
suffer a disability linked to his 1992 disability, and that he was
therefore entitled to a present determination of Bath's liability
under the Longshore Act -- acquiescence in which is the centerpiece
of today's opinion.  But because the Benefits Review Board --
following the lead taken by Judge Tureck -- did not see the merit
of a contention not advanced, the Board's decision is today vacated
and this case remanded for further proceedings harmonious with
today's wisdom.
    A thoughtful reader might well break in at this point to
tell me that my concerns are both finicky and misdirected -- that
what has happened here is an instance of the not-all-that unusual  
scenario in which a legal argument that had not come into focus, or
that had not even been conceived, at earlier stages of the
litigation, emerges (whether through the efforts of counsel or of
the court) and carries the day on appeal.  That perception of what
has happened here may be thought to be implicit in the court's
observation that the entry into this case of the Solicitor of
Labor, "in partial support of [Neely's] position" in this court, was
reflected in the Solicitor's "[r]ecasting the case somewhat." But
the Solicitor's impressive "recasting" was not simply  a rethinking
of what arguments should be deployed to yield a result that had
eluded Neely before Judge Tureck and the Board.  The "recasting" was
a restructuring of the case designed to achieve a result Neely had
not sought.  The Solicitor has, in effect, undertaken to substitute
a new cause of action for the non-cognizable one Neely vainly
deployed.  The Solicitor's advocacy has been of a high order, as
is demonstrated by the fact that this court has, in its well-
reasoned opinion, accepted the bulk of the Solicitor's arguments.  
But even the Solicitor's alchemy is insufficient to turn a sow's
ear into a silk purse.  I have no quarrel with the proposition that
a future claimant should be able to seek a declaration of coverage
on the terms marked out by the court.  But I am not persuaded that
the new cause of action should redound to the benefit of the
claimant who is before this court.
    In noting that the court's opinion has accepted "the bulk"
of the arguments made by the Solicitor, I think it appropriate to
point out that in one crucial particular the court has
circumscribed the new cause of action, imposing a limitation not
expressly called for by the Solicitor.  In insisting that one who
seeks a declaration of coverage "show a 'significant possibility'
of future disability based on the past injury," the court has built
into the new cause of action an element of objectively demonstrable
potential harm -- harm which a declaration of coverage may at least
soften the impact of.  The addition of this ingredient probably
suffices to make the new cause of action a sufficiently ripe case
or controversy so as to be litigable in an Article III court, such
as this one.  However, Neely's case, as it comes to this court,
does not even prima facie fall within the stated limitation.  
Nothing in the record lends credence to the notion that Neely might
some day suffer a disability traceable in any way to the 1992
episode.  The only wisp of potential nexus is to be found in the
court's observation that "Neely's was a back injury, an injury
famously a source of recurring problems." With all respect, I do
not think that a judicial observation of this sort has sufficient
grounding to elevate a conjecture into a controversy.
    In sum, I am in accord with the court's explication of a
new cause of action under the Longshore Act -- a cause of action
that seeks a declaration of coverage as the court has defined such
a declaration.  But I am not persuaded that Martin Neely, having
never sought a declaration of this kind with respect to his 1992
disability, should now acquire the opportunity to drag Bath into
litigation all over again.

</body>

</html>